Filed 6/20/22  P. v. Reyes CA4/3

# NOT TO BE PUBLISHED IN OFFICIAL REPORTS

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## FOURTH APPELLATE DISTRICT

## DIVISION THREE

| | |
|---|---|
| THE PEOPLE, | |
| Plaintiff and Respondent, | G060475 |
| v. | (Super. Ct. No. 09NF1710) |
| EDWARD JAMES REYES et al. | O P I N I O N |
| Defendants and Appellants. | |

Appeal from a postjudgment orders of the Superior Court of Orange County, Cheri T. Pham, Judge.  Affirmed in part, reversed in part, and remanded with directions.

Kendall Dawson Wasley, under appointment by the Court of Appeal, for Defendant and Appellant Edward James Reyes.

Richard Schwartzberg, under appointment by the Court of Appeal, for Defendant and Appellant Mariano Martinez.

Rob Bonta, Attorney General, Charles C. Ragland, Senior Assistant Attorney General, A. Natasha Cortina and Robin Urbanski, Deputy Attorneys General, for Plaintiff and Respondent.

We appointed counsel to represent Edward James Reyes and Mariano Martinez on appeal. Each counsel filed a brief that set forth the facts of the case. Counsel did not argue against their clients but advised the court they found no issues to argue on their behalf.

Counsel filed a brief following the procedures outlined in *People v. Wende* (1979) 25 Cal.3d 436 (*Wende*). The court in *Wende* explained a *Wende* brief is one that sets forth a summary of proceedings and facts but raises no specific issues. Under these circumstances, the court must conduct an independent review of the entire record. When the appellant himself raises specific issues in a *Wende* proceeding, we must expressly address them in our opinion and explain why they fail. (*People v. Kelly* (2006) 40 Cal.4th 106, 110, 120, 124.)

Pursuant to *Anders v. California* (1967) 386 U.S. 738 (*Anders*), to assist the court with its independent review, counsel provided the court with information as to an issue that might arguably support an appeal. Counsel for Reyes presented the following issues: (1) Did the trial court prejudicially err in not appointing counsel for Reyes; (2) Does the enactment of Senate Bill No. 775 (SB 775) require this matter be remanded; and (3) Did the court err by summarily denying Reyes's petition for resentencing under Penal Code section 1170.95 (all further statutory references are to the Penal Code, unless otherwise indicated).

Counsel for Martinez presented the following issues: (1) Do the ameliorative benefits of section 1170.95 apply to Martinez's conviction; (2) Did the trial court err in not appointing counsel in this case; and (3) Did the court err by summarily denying the section 1170.95 petition on the ground that the statute does not apply to

2

attempted murder. Martinez's counsel filed a supplemental opening brief in which he indicated the passage of SB 775 made attempted murder eligible for relief under section 1170.95 and argued the court erred by denying Martinez's petition on the basis of his attempted murder conviction.

Reyes filed a supplemental brief in which he stated his disagreement with counsel's *Wende* brief. He states, "My attorney [overlooked] the fact that I accepted a plea deal. [Section] 1170.95 includes plea deals." He argues that although he took a plea deal, if he had gone to trial the jury could have been instructed on vicarious liability.

Martinez filed a supplemental brief entitled "Mariano Martinez v. Martin Gamboa Warden." In his supplemental brief, Martinez makes four claims: (1) He was erroneously denied appointment of counsel; (2) Section 1170.95 should be applied to attempted murder; (3) He was erroneously denied a hearing because he made a prima facie showing; and (4) The law does not allow malice to be imputed to a person based solely on participation in a crime.

Subsequent to the court receiving the briefs for both defendants and counsel, both counsel and the Attorney General were invited to file supplemental briefs on the effect of SB 775 on these appeals. All parties filed supplemental briefs in response to the court's invitation. Martinez's counsel also filed a reply brief. We will discuss contentions made in this round of briefing anon.

FACTS

In 2009, Chicanos Kicking Ass (CKA) and Family of Latin Kings (FOLKS) were rival street gangs. Reyes, moniker "Menace," Martinez, moniker "Stalker," and Freddie Guerrero, moniker "Cartoon" were members of CKA. On May 20, 2009, Reyes, Martinez, and Guerrero picked up Jose Linares in Martinez's car and asked him if he wanted "'to go to FOLKS.'" Linares understood that to mean they were going to "jump" a FOLKS gang member. Linares told them he was willing and that he

had a gun stashed or hidden.  Guerrero said he wanted to use the gun, but Reyes said he did, so Linares gave the gun, wrapped in a blue or black bandanna, to Reyes.  Martinez was driving the car, Guerrero was in the front passenger seat, Reyes was in the right rear seat, and Linares was in the left rear seat.

Later, they saw Ricardo Cordova, who looked to them to be a FOLKS gang member.  Linares said, "There is one."  Guerrero asked Cordova, "'Where are you from?'"  Cordova replied, "'I don't bang.'"  Guerrero and Reyes got out of the car with "wrappings" on their faces and began running after Cordova.  Guerrero yelled, "CKA." Reyes had the gun in his hand when he got out of the car.  One of the people who got out of the car fired three or four shots from a revolver.  No one could identify the shooter, but Linares testified that when Reyes got back in the car Reyes still had the gun in his hand. Linares also testified he and Reyes later hid the gun in a drainpipe and Reyes told him, "'I think I got him.'"  Linares was charged with attempted murder as a result of the shooting.  He testified at Reyes's trial in return for a promise that he would receive a sentence of 11 years and four months for his involvement in the crime.

A passerby drove Cordova to the hospital.  Cordova was shot in the left occiput, where the base of the skull meets the neck, behind and below the left ear.  The bullet lodged next to Cordova's left jaw.  The bullet blocked the left internal jugular vein, but the artery was not damaged, so the decision was made not to operate to remove the bullet.

Sergeant Henry Fantes found a "dark rag" near the Anaheim intersection of Neighbors Avenue and Onondaga Avenue after a witness pointed it out to him.  The parties stipulated the rag was tested for DNA and that Reyes was excluded as a major contributor, but that Amos Lopez, whose DNA sample was obtained through the CAL–DNA data bank, was a major contributor.  Lopez, moniker "Stranger," was a CKA gang member.

4

On June 17, 2009, Anaheim police officers, including Sergeant Michael Haggerty, stopped the car used in the May 20 shooting. Martinez was driving the car and Reyes, Lopez, and another male were passengers in the car. Inside the car, officers found a length of pipe between the front seats, a souvenir wooden bat, and a claw hammer in places where they would be accessible to be used as weapons. Officers arrested Reyes. Haggerty went to Reyes's apartment in Buena Park to tell his parents he had been arrested, and with the mother's consent, he searched Reyes's bedroom. Haggerty found letters and song lyrics that made reference to "Menace" shooting "fools" on the spot. In addition, there were written references to "Forks," which was a derogatory term for the FOLKS gang.

In September 2009 Reyes and Lopez were housed in juvenile hall. A deputy probation officer, Indalesia Bravo, placed Reyes and Lopez in the same room and set up a microphone so they could be surreptitiously taped. Bravo taped their conversation and listened from the next room. Lopez was heard to tell Reyes the police had told him that Lopez's DNA was found, "[F]or, like a rag right there by where that fool got shot." After some innocuous discussion, Reyes told Lopez, "'Cause I had took off my shirt . . . white, a white, a white shirt across my face.'" When Lopez asked Reyes about a bandana, Reyes responded, "[W]e left it in the car, fool. The, the one that we wrapped it with, right? Yeah, well we came with it 'cause Twin had it right here, he pulled out the strap and gave it to me. There was no bandana.'" Finally, Reyes told Lopez, in apparent response to a question, "Nah, I threw it over there . . . ." Lopez asked, "Twin?" and Reyes answered, "Yeah[,] he came . . . with it already like packing it." "'Strap'" is a common street term for a gun.

An amended information jointly charged Reyes and Martinez with conspiracy to commit murder in violation of section 182, subdivision (a)(1) (count 1), attempted premeditated and deliberate murder in violation of sections 664, subdivision

5

(a), and 187, subdivision (a) (count 2), and being an active participant in a criminal street gang in violation of section 186.22, subdivision (a) (count 3). As to count 2, the information alleged Reyes personally discharged a firearm causing great bodily injury within the meaning of section 12022.53, subdivision (d), personally discharged a firearm within the meaning of section 12022.53, subdivision (c), and he personally used a firearm within the meaning of section 12022.5, subdivision (a). The information also alleged Reyes committed counts 1 and 2 for the benefit of a criminal street gang within the meaning of section 186.22, subdivision (b)(1). Prior to trial, the trial court granted the prosecution's motion to sever the cases of the two defendants.

A jury found Reyes guilty of attempted premeditated murder (count 2), and of being an active member of a criminal street gang (count 3). The jury also found it true Reyes had committed count 2 for the benefit of a criminal street gang within the meaning of section 186.22, subdivision (b)(1). The jury was unable to reach a verdict on count 1, and as to the allegations made as to count 2 pursuant to section 12022.53, subdivisions (c) and (d). The court declared a mistrial as to that count and those allegations.

Martinez pleaded guilty to attempted murder (§§ 664, subd. (a), 187, subd. (a)), two counts of street terrorism (§ 186.22, subd. (a)), and possession of a deadly weapon (§ 12020, subd. (a)(1)), and admitted he was a gang member who vicariously discharged a firearm (§ 12022.53, subds. (c), (e)(1)). Martinez admitted that "on May 20, 2009, [he] unlawfully and with the intent to kill, attempted to kill John Doe while [he] was an active participant in Chicanos Kicking Ass ('CKA'), a criminal street gang, with the specific intent to benefit, promote . . . in criminal conduct by CKA. During the commission of this attempted murder as an active participant of CKA with the intent to benefit CKA, [he] vicariously discharged a firearm." He further admitted, "On June 17, [section] 12020[, subdivision] (a)(1), in association with and for the benefit of CKA, [he] possessed a deadly weapon . . . ."

6

In May 2021, Reyes filed a petition for resentencing under section 1170.95 and stated he was "entitled to be resentenced pursuant to [SB 775]." The prosecution filed an opposition, asserting Senate Bill No. 1437 (SB 1437) was unconstitutional and an attempted murder conviction was not eligible for resentencing. The prosecution further argued Reyes was ineligible for resentencing because his attempted murder conviction is not based on a theory of natural and probable consequences; the jury was not instructed on such theory. Instead, liability was premised on Reyes being a direct perpetrator or aiding and abetting the direct perpetrator.

In June 2021, Martinez filed an in propria persona, handwritten petition for resentencing pursuant to section 1170.95 and attached a declaration under penalty of perjury. In his declaration, Martinez stated, in part, "I was not the shooter[.] I did not aid and abet the crime, I was only the driver[.] I did not know someone was going to get killed, I was not a major participant in the crime[.]"

On June 28, 2021, the trial court summarily denied Reyes's petition, stating in a minute order the following: "The petition does not set forth a prima [facie] case for relief under the statute. A review of court records indicates defendant is not eligible for relief under the statute because the defendant does not stand convicted of murder or defendant's murder conviction(s) is not based on felony-murder or on a natural and probable consequences theory of vicarious liability for aiders and abettors."

The same day, the trial court summarily denied the petition by minute order. The court indicated the following: "The petition does not set forth a prima [facie] case for relief under the statute. A review of court records indicates defendant is not eligible for relief under the statute because the defendant does not stand convicted of murder or defendant's murder conviction(s) is not based on felony-murder or on a natural and probable consequences theory of vicarious liability for aiders and abettors.

7

SECTION 1170.95 SUPPLEMENTAL BRIEFING

In his supplemental brief, Reyes's counsel asserts SB 775 provides that "defendants convicted of attempted murder under the natural and probable consequences doctrine, manslaughter, or murder under an implied malice theory where malice is imputed to a person based solely on that person's participation in a crime may be eligible for relief." He again argues it was error for the court to deny Reyes appointment of counsel and to summarily deny his petition.

In his supplemental brief, Martinez's counsel notes the amended section 1170.95 has added the crime of attempted murder to the crimes eligible for vacatur. He indicates in Martinez's petition, "he averred in a declaration that he was not the shooter and acted solely as a getaway driver in the underlying crime." He then argues that under the amendments contained in sections 188 and 189, Martinez would now be eligible for the third stage of proceedings under section 1170.95 where the prosecution must prove beyond a reasonable doubt that he could be convicted under a now legally acceptable theory of guilt. He further argues, under the recent decision by the California Supreme Court in *People v. Lewis* (2021) 11 Cal.5th 952 (*Lewis*), the failure of the court to appoint counsel after the filing of a facially sufficient petition is error requiring reversal. He requests this court reverses the judgment and order the trial court to appoint counsel and issue an order to show cause.

The Attorney General agrees section 1170.95, subdivision (c), "requires the court to appoint counsel for all properly pleaded petitions, and then conduct a prima facie analysis, with briefing by the parties, as to the petitioner's eligibility before issuing an order to show cause." (§ 1170.95, subd. (c).) He also agrees SB 775 extends the section 1170.95 petition process to the offense of attempted murder, but he argues "remand is not required in this case because the record conclusively establishes that the both appellants stand convicted of attempted murder based on still-valid theories of liability."

8

In a supplemental reply brief, Martinez notes he has now filed a declaration along with his petition in which he states facts contradicting the facts he offered the court as a basis of his plea. Relying on *People v. Langi* (2022) 73 Cal.App.5th 972, he argues the dispute he has created in the facts requires this court to reverse and instruction the trial court to find a prima facie case and move to stage two where the record of conviction contains evidence of ineligibility.

DISCUSSION

SB 1437 amended sections 188 and 189, effective January 1, 2019, to eliminate natural and probable consequences liability for murder, and to limit the scope of the felony murder rule. (*Lewis, supra,* 11 Cal.5th at pp. 957, 959.) Under sections 188 and 189, as amended, murder liability can no longer be imposed on a person who was not the actual killer, who did not act with the intent to kill, or who was not a major participant in the underlying felony who acted with reckless indifference to human life. (*Lewis, supra*, 11 Cal.5th at p. 959.) SB 1437 also added section 1170.95 which, as originally enacted, set forth a procedure whereby a "person convicted of felony murder or murder under a natural and probable consequences theory" could petition for resentencing relief. (§ 1170.95, subd. (a).)

SB 775, effective January 1, 2022, amended section 1170.95, subdivision (a), to expand the individuals entitled to petition for resentencing. (Stats. 2021, ch. 551, § 1, subd. (a).) Subdivision (a) now expressly permits individuals convicted of attempted murder or manslaughter under a natural and probable consequences theory to file a petition for resentencing relief.

A section 1170.95 petition is required to include: "(A) A declaration by the petitioner that the petitioner is eligible for relief under this section, based on all the requirements of subdivision (a). [¶] (B) The superior court case number and year of the petitioner's conviction. [And] [¶] (C) Whether the petitioner requests the appointment of

9

counsel." (§ 1170.95, subd. (b)(1).) "[U]pon the filing of a facially sufficient petition," the statute "requir[es] that counsel be appointed." (*Lewis, supra*, 11 Cal.5th at p. 970.) "[T]hen the court proceeds to subdivision (c) to assess whether the petitioner has made 'a prima facie showing' for relief. (§ 1170.95, subd. (c).)" (*Lewis, supra*, 11 Cal.5th at p. 960.)

Although the trial court may not engage in judicial factfinding or make credibility decisions prior to issuing an order to show cause, under *Lewis, supra*, 11 Cal.5th at page 971, "[t]he record of conviction will necessarily inform the trial court's prima facie inquiry under section 1170.95, allowing the court to distinguish petitions with potential merit from those that are clearly meritless." The *Lewis* court also held a trial court's failure to appoint counsel to represent a petitioner when assessing whether he or she has made a prima facie showing of entitlement to relief pursuant to section 1170.95, subdivision (c), is state law error only, reviewable for prejudice under the harmless error standard of *People v. Watson* (1956) 46 Cal.2d 818. (*Lewis*, *supra*, 11 Cal.5th at pp. 957-958, 973-974.) Specifically, "a petitioner 'whose petition is denied before an order to show cause issues has the burden of showing "it is reasonably probable that if [he or she] had been afforded assistance of counsel his [or her] petition would not have been summarily denied without an evidentiary hearing."' [Citation.]" (*Id*. at p. 974.) We will address each defendant separately.

*I. Reyes*

The Attorney General asserts remand is not required in this case because the record conclusively establishes Reyes and Martinez stand convicted of attempted murder based on still-valid theories of liability. Yet, he concedes that "if the petitioner is not necessarily ineligible as a matter of law and an order to show cause issues, then the trial court may hold an evidentiary hearing. (§ 1170.95, subd. (d).)" He argues that because Reyes's jury was not instructed on the natural and probable consequences

10

doctrine and the jury specifically found that he committed the attempted murder with premeditation and deliberation Reyes is not entitled to relief. It is his contention the record affirmatively establishes that neither Reyes nor Martinez was convicted of attempted murder under a natural and probable consequences or felony murder theory. Because attempted murders committed with the intent to kill and premeditation are still valid theories of liability post-SB 1437 and SB 775, Reyes is ineligible as a matter of law on the finding of premeditation and deliberation.

We agree there was a finding of premeditation and deliberation, but we cannot overlook the fact that although Reyes was charged with the personal use of a firearm, and the jury did not make a true finding on this enhancement. This is contrary to the assumption Reyes was the actual shooter and, therefore, ineligible as a matter of law. We are not persuaded that the finding of premeditation and deliberation standing alone disqualifies Reyes as a matter of law. (See *People v. Eynon* (2021) 68 Cal.App.5th 967, 979.)

We are also not persuaded that the trial court took a close look at the facts of this case. In denying the petition, the court references murder and then states the petition does not set forth a prima facie case for relief under the statute. There is no reference to the crimes of attempted murder of which these defendants were actually convicted. With the benefit of counsel, Reyes can present his best arguments for relief and the court can decide after a hearing whether Reyes is entitled to that relief.

## II. *Martinez*

The Attorney General argues Martinez expressly admitted that he harbored the intent to kill when he committed premeditated attempted murder. He notes, as the factual basis for his guilty plea, Martinez stated on his plea form, "'On May 20, 2009, I did unlawfully and with the intent to kill, attempted to kill John Doe while I was an active

11

participant in Chicanos Kicking Ass (CKA), a criminal street gang, with the specific intent to benefit, promote, further, and assist in criminal conduct by CKA.'"

There is no contention Martinez was the actual shooter. The record demonstrates Martinez was the driver and never left the car. Admittedly, the record of conviction establishes Martinez with his compatriots picked up Linares in Martinez's car and asked Linares if he wanted "'to go to FOLKS.'" Linares understood that to mean they were going to "jump" a FOLKS gang member. Linares told the car's occupants he was willing and that he had a gun stashed or hidden. Guerrero and Reyes had a dispute as to who would use the gun with Reyes prevailing. When Guerrero and Reyes left with the gun, Martinez remained in the car waiting. One of the people who got out of the car fired three or four shots from a revolver and when Reyes got back in the car, he still had the gun in his hand. Martinez then drove away with his compatriots and the gun.

The evidence would appear to demonstrate Martinez directly aided and abetted the shooter in committing the offense by facilitating his movement to the intended target and the shooter's getaway. His conversations with Reyes in juvenile hall further suggest Martinez's direct involvement. Lastly, Martinez personally admitted to the court that he "unlawfully and with the intent to kill, attempted to kill John Doe."

These facts tend to show Martinez was a major participant in the attempted murder and the factual basis he offered at the time of his plea indicate he possessed the intent to kill. Yet, his declaration under penalty of perjury filed with his petition suggests a lack of intent and a different level of involvement. This conflict is best resolved in the trial court after counsel has been appointed. The court then has the ability to hold an evidentiary hearing.

With respect to the court's error in not appointing counsel, on this record we cannot find it is not reasonably probable that even with the appointment of counsel

12

and further briefing, Martinez would have obtained a different result with his section 1170.95 petition. (*Lewis, supra*, 11 Cal.5th at p. 975.)

## DISPOSITION

The postjudgment order denying Reyes's petition to vacate his attempted murder conviction and for resentencing is reversed. The matter is remanded to the superior court with directions to issue an order to show cause (§ 1170.95, subd. (c)), and hold a hearing to determine whether to vacate Reyes's attempted murder conviction and recall his sentence and resentence him (§ 1170.95, subd. (d)).

The postjudgment order denying Martinez's petition to vacate his attempted murder conviction and for resentencing is reversed. The matter is remanded to the superior court with directions to issue an order to show cause (§ 1170.95, subd. (c)), and hold a hearing to determine whether to vacate Martinez's attempted murder conviction and recall his sentence and resentence him (§ 1170.95, subd. (d)). In all other respects the postjudgment orders are affirmed as to both Reyes and Martinez.


O'LEARY, P. J.

WE CONCUR:


MOORE, J.


SANCHEZ, J.

13